No. 26-50192

# In the United States Court of Appeals for the Fifth Circuit

American Beverage Association; Consumer Brands Association; National Confectioners Association; Food Marketplace, Incorporated, doing business as FMI-The Food Industry Association,

Plaintiffs–Appellees,

v.

Ken Paxton, Attorney General, State of Texas,

Defendant–Appellant.

On Appeal from the United States District Court
for the Western District of Texas, Waco Division

## BRIEF FOR APPELLANT


Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Evan S. Greene
Assistant Solicitor General
Evan.Greene@oag.texas.gov

*Counsel for Defendant-Appellant*

# Certificate of Interested Persons

No. 26-50192

---

American Beverage Association; Consumer Brands Association; National Confectioners Association, Food Marketplace, Incorporated, doing business as FMI-The Food Industry Association,

Plaintiffs–Appellees,

v.

Ken Paxton, Attorney General, State of Texas,

Defendant–Appellant.

---

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Evan S. Greene
Evan S. Greene
*Counsel for Defendant-Appellant*

## Statement Regarding Oral Argument

This appeal arises out of a constitutional challenge to newly enacted legislation that requires food manufacturers to place warning labels on food products containing designated ingredients that are associated with early mortality and chronic disease. Plaintiffs lack standing to maintain their First Amendment challenge to the new law. But even assuming the district court properly exercised jurisdiction over that claim, it should not have granted a preliminary injunction. The issues presented are important and worthy of oral argument.

# Table of Contents

Page

Certificate of Interested Persons ..... i
Statement Regarding Oral Argument ..... ii
Table of Authorities ..... v
Statement of Jurisdiction ..... 1
Issues Presented ..... 2
Introduction ..... 3
Statement of the Case ..... 4
I. The Disclosure Law ..... 4
II. Plaintiffs' Lawsuit ..... 7
Summary of the Argument ..... 10
Standard of Review ..... 13
Argument ..... 14
I. Plaintiffs Lack Associational Standing to Maintain their First Amendment Claim. ..... 14
II. Plaintiffs Are Not Entitled to a Preliminary Injunction. ..... 17
A. Plaintiffs failed to establish a likelihood of success on their First Amendment compelled-speech claim ..... 18
1. The district court erred in concluding that strict scrutiny applies to the Disclosure Law ..... 18
2. The Disclosure Law likely is constitutional under *Zauderer* ..... 21
a. The Disclosure Law warning is purely factual. ..... 22
b. The Disclosure Law warning is uncontroversial. ..... 23
c. The Disclosure Law warning is justified. ..... 27
d. The Disclosure Law warning is not unduly burdensome. ..... 28
e. The State preserved the *Zauderer* issue. ..... 29
3. Even if *Zauderer* does not apply, the district court erred in concluding that the Disclosure Law likely would fail under *Central Hudson*. ..... 30

B. Plaintiffs failed to establish the remaining factors for preliminary injunctive relief. ........ 34
Conclusion and Prayer ........ 35
Certificate of Compliance ........ 36

# Table of Authorities

Page(s)

**Cases:**

*Abbott v. Perez*,
585 U.S. 579 (2018) .......... 35
*Bd. of Trs. of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) .......... 32-33
*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .......... 23
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) .......... 2, 3, 8, 11, 18, 30, 31
*Chamber of Com. v. SEC*,
85 F.4th 760 (5th Cir. 2023) .......... 18, 19, 20, 27, 29
*Cornerstone Christian Schs. v. Univ. Interscholastic League*,
563 F.3d 127 (5th Cir. 2009) .......... 14, 15
*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) .......... 34
*Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*,
630 F.3d 431 (5th Cir. 2011) .......... 23
*Free Speech Coal. Inc. v. Paxton*,
95 F.4th 263 (5th Cir. 2024) .......... 18-19, 20, 30
*Friends of Am. Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*,
284 F.3d 575 (5th Cir. 2002) .......... 14, 15, 17
*Ginsburg v. New York*,
390 U.S. 629 (1968) .......... 32
*Glickman v. Wileman Bros. & Elliott, Inc.*,
521 U.S. 457 (1997) .......... 20
*Hotze v. Hudspeth*,
16 F.4th 1121 (5th Cir. 2021) .......... 15
*James v. Hegar*,
86 F.4th 1076 (5th Cir. 2023) .......... 13
*Matter of KP Eng'g, L.P.*,
63 F.4th 452 (5th Cir. 2023) .......... 30
*Lopez Ventura v. Sessions*,
907 F.3d 306 (5th Cir. 2018) .......... 30

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ....................16
*Nat'l Inst. of Fam. & Life Advocates v. Becerra*,
585 U.S. 755 (2018) ....................19, 21-22
*New State Ice Co. v. Liebmann*,
285 U.S. 262 (1932) ....................32
*Nichols v. Alcatel, USA, Inc.*,
532 F.3d 364 (5th Cir. 2008) ....................34
*Nken v. Holder*,
556 U.S. 418 (2009) ....................35
*Ohralik v. Ohio State Bar Ass'n*,
436 U.S. 447 (1978) ....................18
*R J Reynolds Tobacco Co. v. FDA*,
96 F.4th 863 (5th Cir. 2024) ....................18, 20, 21, 22, 23, 25, 28, 29
*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) ....................18
*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) ....................31
*S.W. Airlines Co. v. Saxon*,
596 U.S. 450 (2022) ....................26
*Tex. All. for Retired Ams. v. Scott*,
28 F.4th 669 (5th Cir. 2022) ....................13
*TGS-NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) ....................25
*Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*,
No. 25-20243, 2026 WL 1261993 (5th Cir. May 8, 2026) ....................17
*United States v. Ruiz*,
536 U.S. 622 (2002) ....................1
*Univ. of Tex. v. Camenisch*,
451 U.S. 390 (1981) ....................34
*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ....................13
*Vermont Agency of Nat. Res. v. United States ex rel. Stevens*,
529 U.S. 765 (2000) ....................14
*Warth v. Seldin*,
422 U.S. 490 (1975) ....................14

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 34
*Wooley v. Maynard*,
430 U.S. 705 (1977) .......... 18
*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct.*,
471 U.S. 626 (1985) .......... 2, 3, 8, 11, 18, 21, 22, 23, 25, 26, 27, 28, 29, 30

**Statutes:**

28 U.S.C.
§ 1292(a)(1) .......... 1
§ 1331 .......... 1
§ 1343 .......... 1
42 U.S.C. § 1983 .......... 1
Tex. Gov't Code § 311.011(a) .......... 24
Tex. Health & Safety Code
§ 431.0815 .......... 1, 2, 6
§ 431.0815(a) .......... 5, 16, 19, 22, 24, 25, 26, 32
§ 431.0815(a)(1)-(44) .......... 5
§ 431.0815(b)(1) .......... 2, 3, 5, 6, 7, 15, 16, 19, 22, 24, 25, 26, 28, 29, 32
§ 431.0815(b)(2) .......... 6
§ 431.0815(b)(3) .......... 6, 19
§ 431.0815(c) .......... 6, 19
§ 431.0816 .......... 6
§ 431.0816(a) .......... 6

**Other Authorities:**

Act of June 1st, 2025, 89th Leg., R.S., Ch. 1179 (S.B. 25), Sec. 19(b),
eff. Sept. 1, 2025 .......... 6
Approved Additives & E. Numbers, Food Standards Agency, available
at https://www.food.gov.uk/business-guidance/approved-
additives-and-e-numbers .......... 26
Dietary Guidelines for Americans, USDA, available at
cdn.realfood.gov/DGA.pdf .......... 25, 26
*Recommend*, The American Heritage Dictionary (5th ed. 2016) .......... 24
S. Comm. on Health & Hum. Servs., Bill Analysis, Tex. S.B. 25, 89th
Leg., R.S. (Mar. 5, 2025) .......... 4, 5

## Statement of Jurisdiction

Plaintiffs' complaint includes claims under 42 U.S.C. § 1983 for alleged violations of their rights under the First and Fourteenth Amendments of the U.S. Constitution. ROA.9-45. Accordingly, Plaintiffs assert that the district court had jurisdiction over this lawsuit based upon 28 U.S.C. §§ 1331, 1343. ROA.16. The State, however, contests Plaintiffs' standing to maintain their First Amendment claim. *Infra* pp. 14-17.

On February 11, 2026, the district court issued an order granting Plaintiffs' motion for a preliminary injunction, thereby enjoining the Attorney General from enforcing section 9 of Texas Senate Bill 25 (codified at Tex. Health & Safety Code § 431.0815) against the Plaintiffs. ROA.270-82. The Attorney General timely filed this appeal on March 5, 2026. ROA.302-03.

This Court has jurisdiction to review the district court's order under 28 U.S.C. § 1292(a)(1). And although the State contests Plaintiffs' standing to maintain their First Amendment claim, "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

# Issues Presented

Pursuant to section 431.0815 of the Texas Health & Safety Code, if a food product contains one of forty-four statutorily-listed ingredients, the food manufacturer must post a warning label on the product indicating that the product "contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom." Tex. Health & Safety Code § 431.0815(b)(1) ("Disclosure Law"). Plaintiffs filed this lawsuit contending that the Disclosure Law violates their First Amendment right not to speak. The district court then granted Plaintiffs' motion for preliminary injunctive relief preventing the Attorney General from enforcing the Disclosure Law against them while the lawsuit proceeds. The issues presented are:

1. Whether Plaintiffs have associational standing to maintain their First Amendment challenge to the Disclosure Law on behalf of Plaintiffs' members.

2. Assuming that Plaintiffs have standing, whether the Disclosure Law is subject to and likely will withstand deferential scrutiny under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985), which applies to laws requiring certain commercial disclosures.

3. Assuming that *Zauderer* does not apply, whether the Disclosure Law likely will withstand intermediate scrutiny under *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557 (1980).

4. Whether Plaintiffs established the remaining equitable factors necessary for preliminary injunctive relief.

# Introduction

Texas and the Nation are facing an obesity crisis. Increased obesity is linked to earlier mortality, more chronic disease, and exponentially rising healthcare costs. Through its Disclosure Law, Texas has taken a modest step towards combatting these problems. The law requires food manufacturers to post a warning on a food product indicating, when applicable, that a designated ingredient contained within the product is "not recommended for human consumption" by Australia, Canada, the European Union, or the United Kingdom. Tex. Health & Safety Code § 431.0815(b)(1). The law does not ban usage of any ingredient or otherwise require anyone to say that another jurisdiction bans any ingredient. It's simply a warning that an ingredient is "not recommended" or endorsed by a sophisticated government. That includes neutrality and agnosticism towards consuming the ingredient.

Plaintiffs lack associational standing to maintain their First Amendment compelled-speech challenge to the Disclosure Law because their claim requires particularized information from individual members. The district court cannot assess the claim or issue a proper injunction without those individuals' participation.

But even assuming Plaintiffs have standing, their request for preliminary injunctive relief should have been denied because Plaintiffs cannot show a substantial likelihood of success on the merits of their compelled-speech claim. That claim is subject to *Zauderer* scrutiny because the required disclosure is factual and non-controversial. And the law easily will withstand that deferential review. But even if *Zauderer* is inapplicable, the Disclosure Law likely will withstand *Central Hudson* review, meaning that preliminary injunctive relief should have been denied.

## Statement of the Case

### I. The Disclosure Law

According to the federal government, the United States spends $4.5 trillion per year on health care, with 90 percent of those expenditures spent on Americans' chronic and mental-health conditions. S. Comm. on Health & Hum. Servs., Bill Analysis, Tex. S.B. 25, 89th Leg., R.S. (Mar. 5, 2025). But despite that exorbitant spending, American health is "rapidly declining"—we now rank 60th in the world in life expectancy. *Id.* And much of that decline has been linked to increases in obesity. For example, there has been a 79% increase in early-onset cancer—and ten of the seventeen cancers whose rates increased were related to excess body weight. *Id.* Type 1 diabetes, also linked to obesity, similarly has doubled in the past 40 years. *Id.*

Although recent studies demonstrate a link between consuming an "ultra-processed foods diet" and early mortality, the "American diet[]" often is "overlooked" as a contributor to chronic disease. *Id.* That is so, despite that "[u]ltra-processed food makes up 73% of the US food supply," that "[t]he American daily diet consists of a 57% consumption of ultra-processed foods," and that these foods are linked to obesity, type 2 diabetes, cancer, and cardiovascular disease. *Id.* According to S.B. 25's sponsor, because American dietary changes and increased reliance on ultra-processed foods "are possible contributing factors" to these negative health trends, the Texas Legislature enacted S.B. 25 to "address[] chronic disease." *Id.* The bill contains provisions addressing nutrition, physical activity for students, and the controls over our food system.

S.B. 25 also establishes a warning-label requirement for food manufacturers that use certain ingredients in their food products. As initially introduced, the bill would have required food manufacturers to post labels disclosing the use of any "artificial color," "food additive," or "other chemical ingredient banned by Canada, the European Union, or the United Kingdom" in the manufacturers' food products. Tex. S.B. 25, 89th Leg., R.S., § 7 (2025) (introduced version). If a food product contained a banned chemical, the manufacturer specifically would have been required to warn that the product "may expose you to [a named chemical], *which is banned*" by Canada, the E.U., or the U.K. *Id.* (emphasis added). The introduced version of the bill did not receive an affirmative vote. It then went through substantive amendments during the substitution process.

By the time S.B. 25 passed into law, its warning-label requirement had been substantially modified from the introduced version. Instead of broadly applying to all artificial colors, food additives, and banned chemicals, the Disclosure Law requires a food manufacturer to "include[] a warning label" if any one of forty-four statutorily-listed ingredients is "used in a [food] product intended for human consumption." Tex. Health & Safety Code § 431.0815(a); *see also id.* § 431.0815(a)(1)-(44) (listing ingredients). The required label now must state:

> WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom.

*Id.* § 431.0815(b)(1). It does *not* require a manufacturer to say that the ingredient is limited or banned by any government or jurisdiction.

The Disclosure Law also contains requirements pertaining to the visibility of the warning label. When the warning is required, manufacturers must use "a font size not smaller than the smallest font used to disclose other consumer information" that is required to be disclosed by the U.S. Food & Drug Administration. *Id.* The label must also be "placed in a prominent and reasonably visible location." *Id.* § 431.0815(b)(2). And the label must use a "sufficiently high contrast with the immediate background to ensure the warning is likely to be seen and understood by the ordinary individual under customary conditions of purchase and use." *Id.* § 431.0815(b)(3). There are similar warning requirements that apply when a food manufacturer or retailer offers a covered product for sale on a website. *Id.* § 431.0815(c).

Section 431.0816 provides the Attorney General with discretionary authority to enforce section 431.0815's labeling requirement if he "believes a manufacturer has violated or is violating" the statute. *See id.* § 431.0816(a) ("[T]he attorney general may bring an action on behalf of this state to enjoin the manufacturer from violating that section."). But section 431.0815 applies only to "a food product label developed or copyrighted on or after January 1, 2027." Act of June 1st, 2025, 89th Leg., R.S., Ch. 1179 (S.B. 25), Sec. 19(b), eff. Sept. 1, 2025; *accord* ROA.10. So, existing labels are not subject to the disclosure requirement.

Texas is not the only State that is focused on legislating to protect consumers from potentially harmful ingredients, however. California recently passed its Food Safety Act, which *bans* three of the ingredients covered by the Disclosure Law (potassium bromate, propylparaben, and red dye 3). Cal. Assemb. B. No. 418, 2023-

24 Reg. Sess. (Cal. 2023). New York is considering similar legislation that would ban the same three ingredients. Food Safety & Chem. Disclosure Act, S.B. 1239A, 2025-26 Leg. Sess. (N.Y. 2025) (as passed by Senate). In contrast, Texas's Disclosure Law takes the more modest step of requiring food manufacturers to attach section 431.0815(b)(1)'s warning to foods containing statutorily-listed ingredients so that consumers may make informed decisions before they purchase food products.

## II. Plaintiffs' Lawsuit

The Plaintiffs "are trade associations whose thousands of members make, distribute, and sell" foods and beverages that Americans consume. ROA.9. They contend that, "[i]n many instances, all [four] foreign governments cited in [the Disclosure Law] affirmatively allow the use of ingredients" covered by the law, and that in other instances, "some of the foreign governments . . . do." ROA.11. Because some or all of the foreign governments purportedly "allow" use of particular statutorily-listed ingredients, Plaintiffs assert that the warning label required by the Disclosure Law is "false and misleading" and thus "unconstitutional several times over." ROA.11.

Accordingly, Plaintiffs filed this lawsuit asserting that the Disclosure Law: (1) violates their First Amendment right "not to speak," ROA.28-36; (2) is preempted by certain federal labeling requirements, ROA.36-38; (3) is void for vagueness under the Fourteenth Amendment, ROA.38-40; and (4) violates the dormant Commerce Clause, ROA.40-42. They seek declaratory relief and an injunction preventing the Attorney General from enforcing the Disclosure Law's warning requirement, both facially and as applied to Plaintiffs and their members. ROA.42-44. Shortly after the

lawsuit was filed, Plaintiffs filed a motion for a preliminary injunction contending that they have associational standing to maintain the lawsuit, that they are substantially likely to succeed on the merits of their First Amendment, vagueness, and preemption claims, and that they meet the remaining requirements for equitable relief. ROA.58-115.

The district court granted the motion. It did not address Plaintiffs' standing to maintain this lawsuit, which was not contested below. As for their vagueness and preemption claims, the court found that "Plaintiffs have not shown that the law is so unclear that those in the food industry could not understand [it]," and that Plaintiffs also "have not shown they are substantially likely to succeed on their claim that [the Disclosure Law] is preempted" by federal law. ROA.277-81.

But the court found that Plaintiffs *are* substantially likely to prevail on their First Amendment claim. In so holding, the court concluded that strict scrutiny likely applies to the law "because it is a content-based regulation." ROA.273. It then found that "the state did not make any clear case for why the law passes strict scrutiny." ROA.274. The court specifically rejected applying the deferential test under *Zauderer*, finding that the Disclosure Law's required warning is "not noncontroversial" for purposes of applying *Zauderer*'s "special test" for compelled commercial disclosures. ROA.274. But the court did additionally assess the Disclosure Law under the intermediate-scrutiny standard set forth in *Central Hudson*, and concluded that, though the State has "a substantial interest in supporting the health and well-being of its citizens by promoting better ingredients in foods," ROA.276, the law was not narrowly tailored to meet that interest because

"the State could have spoken itself by conducting an advertising campaign," ROA.277. Having found that Plaintiffs are likely to prevail on their First Amendment claim, the court held that Plaintiffs would suffer irreparable harm absent injunctive relief and that the equities tipped in favor of granting an injunction. ROA.281-82.

## Summary of the Argument

**I.** Plaintiffs lack associational standing to maintain their First Amendment challenge to the Disclosure Law on behalf of their members. Plaintiffs' claim is based on their contention that Texas's required disclosure is "false" in many instances because, according to Plaintiffs, many of the 44 statutorily-listed ingredients are permitted for use in Australia, Canada, the E.U., and the U.K.

The State disagrees with Plaintiffs' construction of the challenged law equating "not recommend[ing]" an ingredient with banning it. But if Plaintiffs are correct, their First Amendment challenge will require participation by Plaintiffs' members to assess the merits of the claim because Plaintiffs concede that the warning would be *true* (and thus constitutional) respecting those listed ingredients that *are* banned in at least one of the four named jurisdictions. Consequently, the case must be litigated by Plaintiffs' members, individually, so that the court can analyze the First Amendment claim on an ingredient-by-ingredient or product-by-product basis. That will ensure that any injunctive relief ultimately awarded is not overbroad—as the district court's order was here, which makes no distinction between Plaintiffs' members who use banned ingredients and those who use permitted ingredients.

**II.** Assuming that Plaintiffs have standing to maintain their First Amendment claim, they were not entitled to a preliminary injunction because they failed to establish a substantial likelihood of success on the merits of that claim. *First*, the district court erred in concluding that the Disclosure Law is subject to strict scrutiny merely because the law regulates speech content. Laws regulating the content of *commercial* speech, like the Disclosure Law, are subject to lesser scrutiny.

*Second*, the Disclosure Law likely is constitutional under *Zauderer*, which applies to factual and non-controversial commercial-disclosure requirements. The Disclosure Law's challenged warning that a particular ingredient is "not recommended for human consumption" by Australia, Canada, the E.U., or the U.K. is factual, under *Zauderer*, because it is verifiable as true or false. The warning also is non-controversial because, properly construed, it is neither overwhelmingly disproven nor subject to a nationwide contentious political dispute. It simply states that at least one of the four named jurisdictions has not endorsed consuming each statutorily-listed ingredient, which Plaintiffs do not appear to dispute. Because *Zauderer* applies, the law surely will be upheld: it is rationally related to Texas's interest in improving its citizens' health and not unduly burdensome *vis-à-vis* Plaintiffs' speech, which remains unhindered by the challenged law.

*Third*, even if *Zauderer* does not apply, the Disclosure Law likely will survive scrutiny under *Central Hudson*. To wit, Texas has a substantial interest in supporting the health of its citizens through promoting the use of better ingredients via the Disclosure Law. The law directly and materially advances that interest by identifying products containing ingredients that are not recommended by other sophisticated jurisdictions, which likely will influence Texans to think twice before purchasing those products. That, in turn, likely will influence food manufacturers to start using healthier ingredients. The law also is narrowly tailored because it does not limit or chill Plaintiffs' speech whatsoever. That the State might have accomplished its goals through its own advertising campaign is irrelevant—*Central Hudson* is not a least-restrictive means test.

Finally, even if Plaintiffs established a substantial likelihood of success on the merits of their First Amendment claim, they failed to show irreparable harm and that the equities tip in favor of awarding preliminary injunctive relief. As for irreparable harm, the challenged law does not go into effect until 2027, so there is no imminent need for relief. The equities also favor the State, which is attempting to promote better health through a modest commercial-disclosure requirement that is reasonably tailored to alert Texans about potentially harmful ingredients contained in certain food products.

## Standard of Review

Although the grant of preliminary junctive relief is reviewed for abuse of discretion, the underlying legal conclusions are reviewed *de novo*. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022). And while the State did not contest Plaintiffs' standing in the district court, "standing to litigate cannot be waived or forfeited." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019). It thus may be raised "for the first time on appeal." *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023).

## ARGUMENT

### I. Plaintiffs Lack Associational Standing to Maintain their First Amendment Claim.

Constitutional standing requirements ordinarily ensure that the judicial power "exists only to redress or otherwise to protect against injury *to the complaining party*." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). But there are limited exceptions to that general rule. For one, an association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).

As for the third requirement, this Court has denied associational standing when resolution of the case involves analysis of "fact-specific . . . claims" requiring "individualized information" from particular members in order "to determine the proper scope of an injunction." *Friends of Am. Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002). In *Wal-Mart*, for example, the Court held that the associational plaintiff's allegations that "Sam's Club's policy improperly interfere[d] with multiple, specific contracts between individual [members] and their manufacturers" required participation of the individual members to assess the claims. *Id.*; *see also Cornerstone*, 563 F.3d at 134 (denying associational standing because "involvement of parents and students . . . [was]

essential to the resolution of the individualized element of coercion within [Cornerstone's] free exercise claim").

Plaintiffs here assert "associational standing" to bring this suit on behalf of their various members rather than asserting any injury of their own. ROA.71-72. But as in *Wal-Mart* and *Cornerstone*, Plaintiffs' suit requires participation of their individual members to assess the merits of their First Amendment claim and to determine the proper scope of any injunction.[1] According to Plaintiffs, that claim turns on whether the Disclosure Law forces their members to convey "false or misleading" statements. ROA.73, 75. To that end, Plaintiffs contend that the Disclosure Law warning—that ingredients listed in subsection (a) are "not recommended for human consumption by . . . Australia, Canada, the European Union, or the United Kingdom," Tex. Health & Safety Code § 431.0815(b)(1)—is "outright false in a substantial number of instances" because "many" (but not all) of the 44 ingredients listed in the statute are "allow[ed]" across all four jurisdictions. ROA.73.

The State disputes Plaintiffs' atextual construction of the statutory warning equating "not recommend[ing]" an ingredient with banning it or not allowing it. *Infra* pp. 23-26. But if Plaintiffs' construction is correct, their First Amendment challenge will require individualized information from Plaintiffs' members to assess the merits of the claim and to tailor any injunction. For starters, Plaintiffs appear to concede that at least *some* of the 44 statutorily-listed ingredients *are* banned or not allowed in one or more of Australia, Canada, the E.U., or the U.K. ROA.73, 88, 95.

[1] Standing "is evaluated on a claim-by-claim basis." *Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021).

That would make section 431.0815(b)(1)'s required warning *true* with respect to those banned ingredients—even under Plaintiffs' strained construction of the statute. Consequently, a court will need to consider Plaintiffs' First Amendment claim on an ingredient-by-ingredient basis, as the Disclosure Law may be constitutional as to some ingredients but unconstitutional as to others (again, under Plaintiffs' construction of the statute and theory of the case). For example, if green 3 is banned or not "permitted" in one or more of the jurisdictions, as Plaintiffs appear to recognize, ROA.88, 95, then any member using that ingredient in a food product *would not* be entitled to injunctive relief, whereas a member who uses an ingredient that is allowed across all four jurisdictions *would* be entitled to relief because the Disclosure Law warning would be false respecting that ingredient.

The point is that, given the extensive list of ingredients included in section 431.0815(a), each ingredient's differing legal status across four different foreign jurisdictions, and the thousands of different food products that Plaintiffs' members make and sell, Plaintiffs' First Amendment claim is not suitable for associational representation under their theory of the case. *Cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) ("For a host of good reasons, courts usually handle constitutional claims case by case, not en masse.").[2] The case, instead, should be litigated by

[2] Indeed, to prevail on their facial challenge, Plaintiffs will need to prove that "no set of circumstances exists under which the [Disclosure Law] would be valid" or that "the law lacks a plainly legitimate sweep." *Id.* Plaintiffs' facial claim is not subject to the "lowered" bar applicable to certain First Amendment claims because the challenged Disclosure Law does not restrict or chill any speech—it compels speech. *See id.* ("To provide breathing room for free expression, we have substituted a less demanding though still rigorous [facial challenge] standard.").

Plaintiffs' members so that a court can assess the First Amendment claim on a manufacturer-by-manufacturer or product-by-product basis, giving proper attention to the ingredients actually used by different members in different products. *Cf. Wal-Mart*, 284 F.3d at 577 ("We see no way to resolve such fact-specific . . . claims without participation of the individual members of the association."). That would eliminate, or at least limit, the likelihood that a court will issue overbroad relief—like the injunction the district court issued here that broadly prevents the Attorney General from enforcing the Disclosure Law "against Plaintiffs or their members" without any distinction between members (or products) that use banned ingredients and members (or products) thus use wholly permitted ingredients. ROA.282. *But cf. Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*, No. 25-20243, 2026 WL 1261993, at *13-14 (5th Cir. May 8, 2026) (reversing "overbroad" injunction that was not tailored to Lanham Act's requirements).

Because Plaintiffs lack associational standing to maintain their First Amendment challenge to the Disclosure Law, the preliminary injunction issued by the district court—which was based on the court's conclusion that the challenged law likely violates the First Amendment, *supra* pp. 8-9—should be vacated.

## II. Plaintiffs Are Not Entitled to a Preliminary Injunction.

Even assuming the district court correctly exercised jurisdiction over Plaintiffs' First Amendment claim, it erred in awarding Plaintiffs a preliminary injunction. Such "extraordinary" relief cannot be granted unless the movant establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent the relief; (3) that the threat of the injury outweighs any harm resulting

from the injunction; and (4) that the injunction will not disserve the public interest. *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023).

## A. Plaintiffs failed to establish a likelihood of success on their First Amendment compelled-speech claim.

Plaintiffs' compelled-speech claim should be analyzed under the framework established in *Zauderer*, which was tailormade for laws compelling commercial disclosures like Texas's Disclosure Law. The law easily will withstand that deferential review. But even if *Zauderer* does not apply, the Disclosure Law likely will withstand intermediate scrutiny under *Central Hudson*. The district court's conclusion that strict scrutiny likely applies plainly is wrong.

### 1. The district court erred in concluding that strict scrutiny applies to the Disclosure Law.

The First Amendment of the U.S. Constitution protects "both the right to speak freely and the right to refrain from speaking." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Consequently, laws compelling speech ordinarily trigger strict scrutiny. *Chamber of Com. v. SEC*, 85 F.4th 760, 768 (5th Cir. 2023); *see also R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876 (5th Cir. 2024) ("[G]overnment-compelled speech inherently regulates speech on the basis of its content. And . . . we generally review content-based regulations of speech under strict scrutiny."). But not always.

More forgiving standards apply to laws regulating *commercial* speech, reflecting its "subordinate position in the scale of First Amendment values." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *see also Free Speech Coal. Inc. v. Paxton*, 95

F.4th 263, 279 (5th Cir. 2024) ("[I]t is equally settled that the government may regulate commercial speech more heavily than non-commercial speech."). Accordingly, laws "compel[ling] disclosures in the context of commercial speech" are subject to "lesser scrutiny" than laws compelling non-commercial speech. *Chamber of Com.*, 85 F.4th at 768; *see also Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 585 U.S. 755, 768 (2018) ("*NIFLA*") ("[O]ur precedents have applied more deferential review to some laws that require professionals to disclose factual, noncontroversial information in their 'commercial speech.'").

Although courts "have not settled the precise bounds of the category of expression that may be termed commercial speech," *Free Speech Coal.*, 95 F.4th at 280 (internal quotation omitted), the speech required by the Disclosure Law indisputably fits the bill. The challenged Disclosure Law applies only to a "food manufacturer" that "offers for sale" a "product intended for human consumption" containing certain listed ingredients. Tex. Health & Safety Code § 431.0815(a). It requires the manufacturer to include a government-crafted warning label printed in a font size not smaller than certain "other consumer information," such that the warning is "likely to be seen and understood . . . under customary conditions of purchase and use." *Id.* § 431.0815(b)(1), (3). There are similar warning requirements for any "food manufacturer" or "retailer" that "offers a [listed] product . . . for sale . . . on the manufacturer's or retailer's Internet website." *Id.* § 431.0815(c).

Because the Disclosure Law applies only to "business" entities engaged in a "commercial transaction," *Free Speech Coal.*, 95 F.4th at 280, it plainly regulates commercial speech and therefore should be subject to "lesser scrutiny" under this

Court's precedent. To wit, this Court repeatedly has declined to apply strict scrutiny for similar government-compelled warning requirements relating to the sale of products or other commercial services. *See id.* at 279-84 (declining to apply strict scrutiny to Texas law requiring commercial pornographic websites to display health warnings); *R J Reynolds*, 96 F.4th at 875-77 (same for FDA's warning-label requirement for cigarette packages and advertisements); *Chamber of Com.*, 85 F.4th at 768-69 (same for SEC rule requiring security issuers to disclose reasons for stock repurchases).

As such, the district court erred in concluding that the Disclosure Law likely is subject to strict scrutiny simply "because it is a content-based regulation." ROA.273. That begs the question. Commercial-speech regulations *are* a class of content-based regulations, but they do not receive strict scrutiny. *Free Speech Coal.*, 95 F.4th at 279; *see also Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 491 n.6 (1997) (Souter, J., dissenting) ("Regulation of commercial speech necessarily turns on some assessment of content . . . yet that fact has never been thought sufficient to require a standard of strict scrutiny." (citation omitted)). Compelled-speech requirements invariably regulate speech content, too. *R J Reynolds*, 96 F.4th at 876. But those that apply to *commercial* speech, like the Disclosure Law, are not subject to strict scrutiny. *Id.* at 876-77.

The district court's grant of injunctive relief proceeded from its erroneous conclusion that the Disclosure Law is subject to strict scrutiny. *See* ROA.274 ("[T]he state did not make any clear case for why the law passes strict scrutiny.").

Because the Disclosure Law compels speech only within the context of a commercial transaction, however, "lesser scrutiny" applies.

**2. The Disclosure Law likely is constitutional under *Zauderer*.**

In *Zauderer*, the Supreme Court established the applicable standard of review for government-compelled commercial speech requirements. 471 U.S. at 650-53; *accord R J Reynolds*, 96 F.4th at 876. As the Court explained, "[b]ecause the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides . . . [any] interest in *not* providing any particular factual information in . . . advertising is minimal." *Zauderer*, 471 U.S. at 651 (citation omitted); *see also id.* ("[D]isclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech."). Respecting the "minimal" First Amendment rights at stake, the Court confirmed that "unjustified" or "unduly burdensome" disclosure requirements "might offend the First Amendment by chilling protected commercial speech." *Id.* But the Court held that Ohio's rule requiring an attorney's contingency-fee advertisement to disclose that clients will have to pay costs even if their lawsuits are unsuccessful "easily pass[ed] muster" under the lenient standard of review. *Id.* at 652.

Distilling *Zauderer* and its progeny, this Court applies *Zauderer* scrutiny where government-compelled commercial warnings are (1) purely factual and (2) uncontroversial. *R J Reynolds*, 96 F.4th at 877. To withstand it, the warnings must (3) be justified by a legitimate state interest and (4) not be unduly burdensome. *Id.* When applicable, *Zauderer* provides for "deferential review" of state law. *NIFLA*,

585 U.S. at 776. It emphatically is *not* a "least restrictive means" test—meaning that a disclosure requirement should *not* be invalidated "merely because other possible means by which the State might achieve its purposes can be hypothesized." *Zauderer*, 471 U.S. at 651 n.14.

**a. The Disclosure Law warning is purely factual.**

To constitute a "purely factual" warning under *Zauderer*, the information contained within it must be limited to "falsifiable material and inferences fairly drawn from it," as contrasted with "non-falsifiable interpretations, reactions or opinions." *R J Reynolds*, 96 F.4th at 878-79 (cleaned up). So, facts and fact-based information are in; opinions are out. This Court has "reject[ed]" any contention that the information "must be true," however, to satisfy this prong. *Id.* at 879. It must only be *verifiable*.

The Disclosure Law warning easily meets this standard. Under the challenged law, if a food product contains an ingredient listed under section 431.0815(a), the food manufacturer must include a warning stating that:

> WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom.

Tex. Health & Safety Code § 431.0815(b)(1).

The required warning consists only of falsifiable, fact-based information. Whether a given product contains an ingredient that at least one of the four listed jurisdictions has "not recommended for human consumption," *id.*, is either true or false. Plain and simple. There is nothing approaching unverifiable interpretation or

opinion within the required disclosure. *Compare R J Reynolds*, 96 F.4th at 879 (concluding that the FDA's required warnings regarding the health consequences of cigarette smoking were "factual," even if "exaggerated," because they were based on scientific findings), *with Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024) (holding that Texas's required sexual-content ratings for schoolbooks were not "factual" because the law required booksellers to "weigh[] and balanc[e] many factors to determine a rating for each book").

Because the information contained in the Disclosure Law's required warning is verifiable and therefore "purely factual," it qualifies for *Zauderer* scrutiny at step one.

**b. The Disclosure Law warning is uncontroversial.**

A factual statement is "controversial" under *Zauderer* if its truth is "overwhelmingly disproven" or if the inherent nature of the subject "raises a live, contentious political dispute." *R J Reynolds*, 96 F.4th at 881. That the speaker "does not like the message" is insufficient to make it controversial. *Id.* That the message is "emotion-inducing" or "ideological" similarly does not suffice. *Id.* at 882. The message instead must be patently false or otherwise fall within "a national political debate" to take the disclosure outside the scope of *Zauderer*. *Id.*

Here, the controversiality analysis turns on the plain text of the Disclosure Law warning. *See Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011) ("[W]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language."). To reiterate, when a food manufacturer sells a food product

containing an ingredient listed under section 431.0815(a), the manufacturer must include a warning label stating that the product "contains an ingredient that *is not recommended* for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom." Tex. Health & Safety Code § 431.0815(b)(1) (emphasis added).

The word "recommend" ordinarily means "[t]o praise or commend to another as being worthy or desirable; endorse." *Recommend*, The American Heritage Dictionary (5th ed. 2016); *see also* Tex. Gov't Code § 311.011(a) ("Words . . . shall be . . . construed according to . . . common usage."). Consequently, if a jurisdiction has "not recommended" an ingredient, it means only that the jurisdiction has *not* praised, commended, or endorsed consuming the ingredient. That includes *both* active restriction of the ingredient, on one extreme, *as well as* inactive neutrality or indifference towards the ingredient, on the other. So, if Canada has remained agnostic or non-committal about an ingredient, it has "not recommended" the ingredient. So long as Canada has *not* affirmatively endorsed consuming an ingredient, it has "not recommended" it for purposes of the Disclosure Law.

Contrary to Plaintiffs' suggestion, Texas's required disclosure does *not* compel anyone to say that Australia, Canada, the E.U., or the U.K. actively *recommends against* consuming any particular ingredient—much less that one of these jurisdictions *bans* or *limits* the ingredient as "unsafe." *Cf.* ROA.73-74. As noted above, the originally introduced, unenacted version of SB 25 *did* require food manufacturers using certain ingredients to include a warning label stating, when applicable, that the food product contained an ingredient "which is banned" by

Canada, the E.U., or the U.K. *See* Tex. S.B. 25, 89th Leg., R.S., § 7 (2025) (introduced version). That language was excised and changed to "that is not recommended," which became law. Tex. Health & Safety Code § 431.0815(b)(1). The change only confirms that "not recommended" should *not* be construed to mean "banned" or anything else to that effect. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 429 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

Sometimes governments do recommend against consuming certain ingredients or products. For example, the U.S. government currently advises consumers to "avoid sugar-sweetened beverages, such as sodas, fruit drinks, and energy drinks."[3] So, it would be accurate to say that the U.S. government "recommends against" drinking sugar-sweetened soda. In contrast, the required Disclosure Law warning merely provides that at least one of Australia, Canada, the E.U. or the U.K. has "not recommended" consuming an ingredient. Tex. Health & Safety Code § 431.0815(b)(1). That includes agnosticism, indifference, or inaction.

As such, the Disclosure Law warning is true—or, at the very least, not "overwhelmingly disproven" for purposes of *Zauderer*. *R J Reynolds*, 96 F.4th at 881. Indeed, several of the ingredients set forth in section 431.0815(a) appear to be banned or restricted by at least one of the four jurisdictions named in subsection (b)(1).

[3] Dietary Guidelines for Americans at 4, USDA, available at cdn.realfood.gov/DGA.pdf (last visited May 28, 2026).

ROA.88, 95.[4] But, again, the Disclosure Law warning merely says that at least one of Australia, Canada, the E.U. or the U.K. has "not recommended" consuming the ingredient at issue. Tex. Health & Safety Code § 431.0815(b)(1). As long as at least one jurisdiction has remained agnostic about the ingredient, then, the warning is true. Put another way, the warning would be false only if all four listed jurisdictions actively *endorse* consuming the ingredient at issue.[5] But Plaintiffs make no such argument with respect to any listed ingredient. Their claim instead boils down to substituting the words "banned" or "restricted" for the phrase "not recommended" that actually *is* used in the statute. ROA.73-74, 77; *cf. S.W. Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022) ("[W]e have no warrant to elevate vague invocations of statutory purpose over the words Congress chose.").

Plaintiffs also cannot show that the Disclosure Law's subject matter falls within a live, contentious, national political debate for purposes of avoiding *Zauderer*. Whether any of the four foreign jurisdictions has "not recommended" consuming the ingredients set forth in section 431.0815(a)—like "anisole," "ficin," and

[4] *See also* Approved Additives & E. Numbers, Food Standards Agency, available at https://www.food.gov.uk/business-guidance/approved-additives-and-e-numbers (last visited May 28, 2026) (showing that azodicarbonamide, calcium bromate, and morpholine are *not* on the U.K.'s permitted ingredients list).

[5] Just as governments may affirmatively recommend against consuming certain foods, they may also affirmatively endorse eating certain foods. To illustrate, the U.S. government currently recommends "eat[ing] a variety of colorful, nutrient-dense vegetables and fruits" and "prioritiz[ing] fiber-rich whole grains." Dietary Guidelines for Americans at 3, *supra* n.3.

"sodium aluminum sulfate"—hardly suffices for adequate controversiality. Unlike disclosures regarding the availability of state-subsidized abortion that are "too controversial" for *Zauderer* scrutiny, *Chamber of Com.*, 85 F.4th at 770, the Disclosure Law contains a simple, straightforward, non-contentious message regarding foreign jurisdictions' lack of recommendations for a host of ingredients that most Americans do not know anything about, much less debate. The district court's conclusory holding—that *Zauderer* does not apply because the challenged disclosure "is not noncontroversial," ROA.274—is unsupported and unsupportable.

Because the Disclosure Law's required warning is not overwhelmingly disproven and does not fall within a contentious national debate, it is noncontroversial and therefore qualifies for *Zauderer* scrutiny at step two.[6]

**c. The Disclosure Law warning is justified.**

Having satisfied the two threshold steps for *Zauderer* applicability, the Disclosure Law must also withstand the deferential scrutiny applied at steps three and four. *Supra* p. 21.

[6] If the Court disagrees with the State and construes "not recommended" to mean that at least one of the jurisdictions recommends against, limits, or bans a listed ingredient, the record would need to be developed to determine whether the warning would be true (under that construction) for purposes of applying *Zauderer* at subsequent stages of the lawsuit. The district court did not reach that issue. ROA.274 ("The Court finds that it does not need to reach the issue of whether the message should be considered false or misleading."). And, as argued above, that inquiry should proceed on a manufacturer-by-manufacturer or product-by-product basis. *Supra* pp. 14-17.

To that end, "raising consumer awareness" regarding the safety or quality of a product suffices as a "legitimate state interest" that may justify requiring a disclosure under *Zauderer*. *R J Reynolds*, 96 F.4th at 883-84; *see also* ROA.276 (recognizing the State's "substantial interest in supporting the health and well-being of its citizens by promoting better ingredients in foods sold in Texas"). To satisfy *Zauderer*'s justification standard, the disclosure need only bear a "reasonable relation" to that legitimate interest. *R J Reynolds*, 96 F.4th at 883-85.

The Disclosure Law warning easily meets this forgiving rational-basis standard. By advising Texas consumers that an aligned, sophisticated jurisdiction has "not recommended" consuming an ingredient contained within a food product, Tex. Health & Safety Code § 431.0815(b)(1), the warning will raise awareness regarding potential safety or quality concerns and likely will make consumers think twice before purchasing the product. That, in turn, may influence food manufacturers to consider using different ingredients in their products. The Disclosure Law warning therefore bears a reasonable relationship to Texas's twin goals of "[i]ncreasing public understanding" of potential concerns relating to consuming the listed ingredients, *R J Reynolds*, 96 F.4th at 883, and promoting the creation of better products, ROA.276. That the State might have accomplished these goals through alternate paths, ROA.74, 76, is of no moment. *Zauderer* is not a "least restrictive means" test. *Supra* p. 22.

**d. The Disclosure Law warning is not unduly burdensome.**

To satisfy the final step of the *Zauderer* inquiry, the challenged law "cannot impose a burden excessive or disproportionate to the benefits gained" from the

required disclosure. *R J Reynolds*, 96 F.4th at 885. This analysis "focus[es] on the possibility of chilling protected commercial speech." *Id.* at 886; *see also Chamber of Com.*, 85 F.4th at 772 (assessing whether compelled disclosures "drowned out [the plaintiff's] own message").

Plaintiffs do not seriously contend that the required Disclosure Law warning unduly burdens Plaintiffs' own speech—nor could they. When applicable, the law merely requires food manufacturers to print the warning "in a font size not smaller than the smallest font sized used to disclose other consumer information required by [the USFDA]." Tex. Health & Safety Code § 431.0815(b)(1). Plaintiffs fail to explain how that minimal requirement will chill their speech or otherwise deprive them of "ample room . . . to distinguish their products from other products." *R J Reynolds*, 86 F.4th at 886. They instead focus on the cost of producing the required warning, ROA.82-83, which is not pertinent to the *Zauderer* analysis, 471 U.S. at 651 ("[U]nduly burdensome disclosure requirements might offend the First Amendment *by chilling protected commercial speech*." (emphasis added)).

**e. The State preserved the *Zauderer* issue.**

Below, the district court recognized that the State cited *Zauderer*. ROA.274. It nonetheless suggested that the State "did not make an affirmative argument" that the deferential *Zauderer* test should apply. ROA.274. But the State *did* argue that since *Zauderer*, "the Supreme Court has emphasized that because disclosure requirements have less of an effect on a party's interests than do flat prohibitions on speech, warnings or disclaimers may be appropriately required in order to avoid or diminish consumer confusion." ROA.209. In briefing that point, the State

differentiated compelled commercial-speech requirements from other commercial-speech restrictions that are subject to more demanding scrutiny. Plaintiffs and their supporting *amici* also raised and attempted to refute *Zauderer*'s applicability. ROA.77-78, 167-76, 187-90.

To preserve an argument for appeal in this Court, the argument must have been raised only "to such a degree that the trial court *could* rule on it." *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 458 (5th Cir. 2023) (emphasis added); *see also Lopez Ventura v. Sessions*, 907 F.3d 306, 311 (5th Cir. 2018) ("It is settled practice that to be considered on review, an issue must generally have been 'pressed or passed upon' in the tribunal *a quo*." (citations omitted)). Here, despite suggesting that the State did not argue for *Zauderer* review, the district court specifically *rejected* applying it. ROA.274 ("The Court finds that *Zauderer*'s deferential test does not apply here."). The court's ruling was more than sufficient to preserve the issue regarding *Zauderer*'s applicability for appeal.

**3. Even if *Zauderer* does not apply, the district court erred in concluding that the Disclosure Law likely would fail under *Central Hudson*.**

But if the Court concludes that *Zauderer* is inapplicable, then the path forward becomes less clear. *See Free Speech Coal.*, 95 F.4th at 283 ("It is unsettled precisely which standard of scrutiny applies to compelled commercial speech that is not subject to *Zauderer* scrutiny."). Recognizing that *Central Hudson* was designed to assess *restrictions* on commercial speech, this Court nonetheless has applied that familiar standard to laws *compelling* commercial speech in some cases. *E.g.*, *id.* That's

what the district court did, too. ROA.275-77. So, the State will address the Disclosure Law under that framework, which requires the State to show: (1) a substantial interest underlying the challenged law; (2) that the law directly and materially advances that interest; and (3) that the law is narrowly tailored to achieve the desired result. *Cent. Hudson*, 447 U.S. at 566.[7]

*First*, the district court rightly acknowledged the State's "substantial interest in supporting the health and well-being of its citizens by promoting better ingredients in foods sold in Texas" via the Disclosure Law. ROA.276; *see also Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995) (recognizing that the federal government's "significant interest in protecting the health, safety, and welfare of its citizens" is promoted through labeling restrictions). Plaintiffs recognize the importance of that interest, too. *See* ROA.64 ("All agree that improving safety and transparency [in food products] are vitally important goals."). And, as discussed above, American long-term health has been deteriorating—with much of that decline linked to Americans' increased obesity and increased dependence on ultra-processed foods in their diets. *Supra* p. 4. The State unquestionably maintains a substantial interest in addressing those problems.

*Second*, the Disclosure Law directly and materially advances the State's interest in supporting a healthy citizenry by identifying ingredients used in ultra-processed

[7] *Central Hudson* ordinarily also includes a preliminary inquiry into whether the plaintiff's restricted expression is protected by the First Amendment. *Id.* Because the Disclosure Law does not restrict any speech, however, that element is inapplicable here.

foods, Tex. Health & Safety Code § 431.0815(a), and requiring food manufacturers to warn consumers, when applicable, that a food product "contains an ingredient that is not recommended for human consumption by . . . Australia, Canada, the European Union, or the United Kingdom," *id.* § 431.0815(b)(1). In so doing, the law likely will influence consumers to think twice before purchasing and consuming unrecommended products, which, in turn, will force manufacturers to use better ingredients. The very existence of this lawsuit suggests that Plaintiffs are concerned that the Disclosure Law will do just that.

The district court nonetheless concluded that the law would not "directly and materially advance" the State's goals, presumably because the State has not, itself, established the dangerousness of each listed ingredient. ROA.277. But that is not the standard—particularly where no speech is being burdened. *See Ginsburg v. New York*, 390 U.S. 629, 642-43 (1968) ("We do not demand of legislatures scientifically certain criteria of legislation." (citation omitted)); *cf. New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) ("To stay experimentation in things social and economic is a grave responsibility, [for] [d]enial of the [States'] right to experiment may be fraught with serious consequences to the nation."). Texas should have the chance to address obesity and related chronic disease affecting the State and the country through its modest Disclosure Law.

*Third*, the Disclosure Law is narrowly tailored to achieve the State's interest—meaning that the law does not "burden substantially more speech than is necessary" to advance that interest. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 478

(1989). Again, Plaintiffs are not even contending that the law burdens their own speech. *Supra* pp. 28-29. That should be dispositive.

But Plaintiffs argued (at ROA.76) and the district court found that the Disclosure Law fails this prong because, rather than requiring food manufacturers to post a label, "the State could have spoken itself by conducting an advertising campaign," ROA.277. It is self-evident, however, that a warning label placed directly on a food product would be more likely to reach and affect consumers than would a separate State advertising campaign that would have to address 44 different ingredients included in a countless array of food products. In all events, this prong does not require the State to show "that the manner of restriction is absolutely the least severe that will achieve the desired end." *Fox*, 492 U.S. at 480. But that's precisely what the district court required in finding that the Disclosure Law is not narrowly tailored merely because Plaintiffs and the court could identify an alternative way to address the State's interest in improving Texans' health. That was error. *See id.* ("What our decisions require is a fit between the legislature's ends and the means chosen to accomplish those ends . . . a fit that is not necessarily perfect, but reasonable . . . that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served . . . that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." (cleaned up)).

### B. Plaintiffs failed to establish the remaining factors for preliminary injunctive relief.

The district court's analysis of the irreparable-harm and public-interest prongs was wholly premised on the court's erroneous conclusion that the Disclosure Law likely violates the First Amendment. *See* ROA.282 ("Because the Court has found Plaintiffs demonstrated a substantial likelihood of success on the merits of their First Amendment claim, the Court finds they have likewise satisfied the irreparable harm factor.") ("[Texas] does not have an interest in enforcing a law that likely violates the First Amendment."). But Plaintiffs bear the burden of establishing each of these elements independently. *E.g.*, *Nichols v. Alcatel, USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). And they tilt against awarding preliminary injunctive relief in this case. *Cf. Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

As for irreparable harm, the movant is required to show more than "the possibility of some remote future injury." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). There must be a concrete and imminent harm. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[S]peculative injury is not sufficient."). Yet here, the challenged Disclosure Law requirements do not go into effect until 2027. *Supra* p. 6. And the Attorney General, who has discretionary authority to enforce those requirements, *supra* p. 6, has no ability to conduct any enforcement action until next year. Plaintiffs' members' potential need to modify their food-product labels or change ingredients in the

future, ROA.82, does not qualify as imminent harm—particularly when they have not been threatened with any potential enforcement action.

The remaining balancing-of-harms and public-interest prongs merge when the State is the defendant. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As discussed above, the Texas Legislature enacted the Disclosure Law to combat obesity and chronic disease associated with consumption of ultra-processed foods by providing Texas consumers with information about potentially harmful ingredients contained in these products. *Supra* pp. 4-5. The State's good faith in attempting to improve health conditions for Texans "must be presumed." *Abbott v. Perez*, 585 U.S. 579, 603 (2018). Enjoining the State from enforcing the Disclosure Law therefore causes public harm that necessarily outweighs the remote injuries cited by the Plaintiffs.

## Conclusion and Prayer

Because Plaintiffs lack standing to maintain their First Amendment claim, this Court should vacate the preliminary injunction issued by the district court. But if the Court concludes that Plaintiffs have standing, the Court should reverse the preliminary injunction for the reasons set forth above.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Evan S. Greene
Evan S. Greene
Assistant Solicitor General
evan.greene@oag.texas.gov

*Counsel for Defendant-Appellant*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,444 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Evan S. Greene
EVAN S. GREENE