No. 26-50192

# In the United States Court of Appeals for the Fifth Circuit

American Beverage Association; Consumer Brands Association; National Confectioners Association, Food Marketplace, Incorporated, doing business as FMI-The Food Industry Association,

Plaintiffs–Appellees,

v.

Ken Paxton, Attorney General, State of Texas,

Defendant–Appellant.

On Appeal from the United States District Court
for the Western District of Texas, Waco Division

## REPLY BRIEF FOR APPELLANT

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Evan S. Greene
Assistant Solicitor General
Evan.Greene@oag.texas.gov

*Counsel for Defendant-Appellant*

# Table of Contents

Page

Table of Authorities ..... ii

Introduction ..... 1

Argument ..... 2

I. Plaintiffs Lack Associational Standing to Maintain their Compelled-Speech Claim. ..... 2

II. Plaintiffs Failed to Establish a Likelihood of Success on their Compelled-Speech Claim. ..... 5

A. There is no basis for strict scrutiny. ..... 5

B. The Disclosure Law likely is constitutional under *Zauderer*. ..... 8

C. Even if *Zauderer* is inapplicable, the Disclosure Law likely satisfies intermediate scrutiny. ..... 12

III. Plaintiffs Failed to Establish the Remaining Factors for Preliminary Injunctive Relief. ..... 16

Conclusion and Prayer ..... 17

Certificate of Compliance ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Am. Bev. Ass'n v. City & County of San Francisco*,
916 F.3d 749 (9th Cir. 2019) .......... 15
*Am. Meat Inst. v. USDA*,
760 F.3d 18 (D.C. Cir. 2014) .......... 14
*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
627 F.3d 547 (5th Cir. 2010) .......... 4
*Bd. of Trustees of State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989) .......... 15
*Book People, Inc. v. Wong*,
91 F.4th 318 (5th Cir. 2024) .......... 7, 16
*Central Hudson Gas & Electric Corp. v. Public Service Commission*,
447 U.S. 557 (1980) .......... 1, 12, 13, 14, 15
*Chamber of Com. v. SEC*,
85 F.4th 760 (5th Cir. 2023) .......... 5, 6, 16
*Chiles v. Salazar*,
146 S. Ct. 1010 (2026) .......... 6
*Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*,
916 F.3d 483 (5th Cir. 2019) .......... 7
*Free Speech Coal., Inc. v. Paxton*,
95 F.4th 263 (5th Cir. 2024) .......... 5, 14, 15
*Friends of Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*,
284 F.3d 575 (5th Cir. 2002) .......... 4
*Guy Carpenter & Co., Inc. v. Provenzale*,
334 F.3d 459 (5th Cir. 2003) .......... 17
*Hignell-Stark v. City of New Orleans*,
154 F.4th 345 (5th Cir. 2025) .......... 11
*Kaswatuka v. DHS*,
7 F.4th 327 (5th Cir. 2021) .......... 12
*Miller v. Johnson*,
515 U.S. 900 (1995) .......... 13
*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) .......... 2, 11

*Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*,
389 F.3d 491 (5th Cir. 2004) ........................................................................ 4
*National Institute of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018) ..........................................................................6, 7, 10, 11
*NetChoice, L.L.C. v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ........................................................................ 10, 11
*Ohralik v. Ohio State Bar Ass'n*,
436 U.S. 447 (1978) ..................................................................................... 5-6
*R J Reynolds Tobacco Co. v. FDA*,
96 F.4th 863 (5th Cir. 2024) ..........................................................6, 8, 10, 11, 16
*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) ......................................................................................... 7
*Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*,
175 F.4th 582 (5th Cir. 2026) ........................................................................... 3
*Va. House of Delegates v. Bethune-Hill*,
587 U.S. 658 (2019) ......................................................................................... 4
*Warth v. Seldin*,
422 U.S. 490 (1975) ......................................................................................... 4
*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
471 U.S. 626 (1985) .............................................................1, 7, 8, 10, 11, 12, 16

**Statutes:**

Tex. Gov't Code
§ 311.011(a) ........................................................................................................ 9
§ 311.011(b) ........................................................................................................ 9
Tex. Health & Safety Code
§ 431.0815(a) ............................................................................... 2, 3, 6, 9, 11
§ 431.0815(a)(1)-(44) ........................................................................................ 2
§ 431.0815(b)(1) ........................................................................... 1, 2, 8, 9, 13

## Introduction

Texas's Disclosure Law takes a modest step towards combatting the State's obesity and chronic-disease crisis. When applicable, the law requires a food manufacturer to post a small warning label indicating that a product contains an ingredient that is "not recommended for . . . consumption" by another trusted jurisdiction. Tex. Health & Safety Code § 431.0815(b)(1). That warning is intended to influence consumers to consider purchasing products containing other, healthier ingredients, thereby encouraging the food-and-beverage industry to stop using the designated ingredients. Plaintiffs and their *amici* wield the First Amendment in their effort to dispatch the law. Yet no one suggests that the Disclosure Law restricts or even burdens their own speech in any fashion—because it doesn't.

The First Amendment claim should be dismissed before even reaching its merits, however, because Plaintiffs lack associational standing to maintain it. Assessing the claim requires particularized information from Plaintiffs' members so that appropriate relief could be fashioned if Plaintiffs ultimately prevail.

Assuming Plaintiffs have standing, they still aren't entitled to preliminary injunctive relief because the Disclosure Law is subject to deferential *Zauderer* review, which the law easily withstands. Plaintiffs' effort to avoid *Zauderer* rests on blinking at the actual words used in the disclosure to make it appear false or misleading. It's not. But even if *Zauderer* doesn't apply, the Disclosure Law would withstand *Central Hudson* review because the law patently advances the State's interest in informing consumers about health and safety concerns relating to designated ingredients—all without burdening Plaintiffs' speech. Preliminary relief should have been denied.

# ARGUMENT

## I. Plaintiffs Lack Associational Standing to Maintain their Compelled-Speech Claim.

Texas's Disclosure Law requires a food manufacturer to "include[] a warning label" if the manufacturer uses any one of forty-four statutorily-listed ingredients "in a [food] product intended for human consumption." Tex. Health & Safety Code § 431.0815(a); *see also id.* § 431.0815(a)(1)-(44) (listing ingredients). The required label must state:

> WARNING: This product contains an ingredient that is not recommended for human consumption by the appropriate authority in Australia, Canada, the European Union, or the United Kingdom.

*Id.* § 431.0815(b)(1).

The State's opening brief demonstrated that Plaintiffs lack associational standing to maintain their compelled-speech challenge to the Disclosure Law because the claim requires Plaintiffs' members to participate in the lawsuit. State Br. 14-17. As Plaintiffs recognize, the claim turns on whether the Disclosure Law forces Plaintiffs' members to convey "false" or "misleading[]" information. Pls. Br. 9. Because the required disclosure indisputably is *true* for those statutorily-listed ingredients that *are* banned by Australia, Cananda, the E.U., or the U.K., however, ROA.88, 95, the claim cannot be adjudicated "en masse," *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024).[1] The case, instead, must be pursued by Plaintiffs'

[1] Indeed, Plaintiffs' "Exhibit A" submitted with their Complaint appears to concede that 28 out of the 44 statutorily-listed ingredients are "not permitted" for use in at least one of the four jurisdictions. ROA.46-48.

members, on an ingredient-by-ingredient basis, to protect against the issuance of improper, overbroad relief. *Cf. Trojan Battery Co., L.L.C. v. Golf Carts of Cypress, L.L.C.*, 175 F.4th 582, 602 (5th Cir. 2026) ("As with injunctive relief generally, an equitable remedy . . . should be no broader than necessary."). To wit, the preliminary injunction entered below prevents the Attorney General from enforcing the Disclosure Law "against Plaintiffs or their members," ROA.282, without distinguishing between members who use wholly-permitted ingredients in their food products and those who use ingredients banned by Australia, Cananda, the E.U., or the U.K.

Plaintiffs and their *amici* respond with *ipse dixit*. Pls. Br. 21 ("Plaintiffs' challenge doesn't require any fact-intensive, member-by-member, or ingredient-by-ingredient inquiry."); Tex. Ass'n of Mfrs. Br. 17 ("Regardless of which ingredient triggers the obligation . . . the constitutional harm is the same."); Wash. Legal Found. Br. 6 ("There's no need to force every member of each trade association plaintiff to clog the federal docket with virtually identical complaints."). But they fail to account for the fact that the Disclosure Law may be constitutional as to some ingredients but unconstitutional as to others under Plaintiffs' construction of the law and theory of the case. State Br. 15-17. With the sweeping list of ingredients covered by section 431.0815(a), those ingredients' differing legal statuses across four jurisdictions, ROA.46-48, and the 100,000-plus food-and-beverage products sold by Plaintiffs' members containing one or more of those ingredients, Pls. Br. 11, Plaintiffs cannot just whisk away associational standing requirements—which *already* provide an exception to the rule that "Art[icle] III judicial power exists only to redress or

otherwise to protect against injury to the complaining party," *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Plaintiffs' related reminder that they "seek only equitable relief," Pls. Br. 22 (quotation marks omitted), also misses the mark. As the Court has explained, associational standing is inappropriate where "the district court would need individualized information . . . to determine the proper scope of an injunction." *Friends of Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002). That's the case here, where a court would need to consider the ingredients used by Plaintiffs' members in different products to tailor an appropriate injunction accounting for the ingredients' differing legal statuses under Plaintiffs' theory of the case.

So, Plaintiffs resort to arguing that the State forfeited its standing challenge because it was not raised in the district court. Pls. Br. 20-21. Of course, standing arguments ordinarily cannot be waived. *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662-63 (2019). And even assuming that the member-participation prong of associational standing is "solely prudential" and "subject to forfeiture," Pls. Br. 20 (citations omitted), the issue can and should be addressed now, *cf. Nat'l Solid Waste Mgmt. Ass'n v. Pine Belt Reg'l Solid Waste Mgmt. Auth.*, 389 F.3d 491, 498 (5th Cir. 2004) (considering prudential standing *sua sponte*). As the Court has explained, this prong is assessed by examining "the relief requested and the claims asserted" in the complaint, with the aim of promoting "administrative convenience and efficiency." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). Consequently, there is no reason to wait for fact discovery. Indeed, requiring

the State to return to the district court to raise this issue in the first instance would be antithetical to promoting judicial efficiency.

Because Plaintiffs lack associational standing to maintain their First Amendment claim, the preliminary injunction should be vacated and the district court should be directed to dismiss the claim.

## II. Plaintiffs Failed to Establish a Likelihood of Success on their Compelled-Speech Claim.

Assuming the district court properly exercised jurisdiction over Plaintiffs' compelled-speech claim, it erred in awarding preliminary injunctive relief because Plaintiffs failed to demonstrate a substantial likelihood of success on the merits of the claim.

### A. There is no basis for strict scrutiny.

For starters, the district court erred in concluding that the Disclosure Law is subject to strict scrutiny. As the State explained in its opening brief (at 18-21), commercial-speech regulations—including laws "compel[ling] disclosures in the context of commercial speech"—are subject to "lesser scrutiny" than laws that regulate non-commercial speech. *Chamber of Com. v. SEC*, 85 F.4th 760, 768 (5th Cir. 2023); *see also Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 279 (5th Cir. 2024) ("[I]t is equally settled that the government may regulate commercial speech more heavily than non-commercial speech."). And, here, the Disclosure Law undisputedly regulates such "subordinate" speech. *Ohralik v. Ohio State Bar Ass'n*,

436 U.S. 447, 456 (1978).[2] The law requires a "food manufacturer" to include a government-crafted warning label when the manufacturer "offers for sale" certain "product[s] intended for human consumption." Tex. Health & Safety Code § 431.0815(a). Plaintiffs rightly concede that the Disclosure Law only "compels commercial speech." Pls. Br. 23.

But Plaintiffs still argue for strict scrutiny. Parroting the district court's error, they contend that strict scrutiny applies because the Disclosure Law regulates "content." Pls. Br. 23-24; *accord* Chamber of Com. Br. 6-7; Tex. Ass'n of Mfrs. Br. 7; Wash. Legal Found. Br. 14-15. But that's true of most commercial-speech regulations—particularly those that compel commercial disclosures. State Br. 20. They nonetheless aren't subject to strict scrutiny. *Chamber of Com.*, 85 F.4th at 768; *see also R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876 (5th Cir. 2024) ("[W]e generally review content-based regulations of speech under strict scrutiny *unless* they come within an exception such as the commercial speech exceptions." (emphasis added)).

Overlooking this Court's precedent, Plaintiffs contend (at 24-25) that the U.S. Supreme Court "nodded towards strict scrutiny" for compelled commercial-speech requirements in *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ("*NIFLA*"). But *NIFLA* was not a commercial-speech case. It concerned a

---

[2] Despite Texas Association of Manufacturers' contention (at 10-12) that "[h]istory," "tradition," and "First Amendment values" support treating commercial speech identically to non-commercial speech, the Supreme Court just reaffirmed that "less searching review" applies to regulation of the former. *Chiles v. Salazar*, 146 S. Ct. 1010, 1022 (2026).

California law that required pro-life "crisis pregnancy centers" to post a state-crafted message advising visitors about the existence of publicly-funded abortions. *Id.* at 763. In concluding that heightened scrutiny applied to the challenged law, the Court rejected any notion that the law regulated plaintiffs' "commercial speech." *See id.* at 768-69 ("The [required] notice in no way relates to the services that [plaintiffs] provide. Instead, it requires these clinics to disclose information about *state*-sponsored services—including abortion.").

The Chamber of Commerce additionally points (at 7-8) to *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011), and *Book People, Inc. v. Wong*, 91 F.4th 318, 325-26, 339-40 (5th Cir. 2024), to support the argument for strict scrutiny. But *IMS Health* presumed the challenged Vermont law at issue applied to commercial speech and assessed the law under intermediate scrutiny. 564 U.S. at 571-72. And *Book People* held only that the relaxed standard set forth in *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985), did not apply because the law at issue required booksellers to publish non-factual, discretionary "sexual-content ratings" for books. 91 F.4th at 339-40. The Court did not apply or even mention strict scrutiny.

Because First Amendment protection for commercial speech "is more limited than for most other speech," *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 487 (5th Cir. 2019), there is no basis to apply strict scrutiny to the Disclosure Law.

### B. The Disclosure Law likely is constitutional under *Zauderer*.

**1.** The State's opening brief explained that the Disclosure Law should be analyzed and upheld under the deferential *Zauderer* standard, which applies to "factual" and "uncontroversial" commercial-disclosure requirements. State Br. 21-27. The Disclosure Law warning is factual because it includes only verifiable information—*i.e.*, that a product contains an ingredient that Australia, Canada, the E.U., or the U.K. has "not recommended for human consumption." Tex. Health & Safety Code § 431.0815(b)(1). And the warning is uncontroversial because it is neither overwhelmingly disproven nor subject to contentious dispute. It provides only that one (or more) of the four named jurisdictions has "not recommended" consuming an ingredient contained within the subject product, *id.*—which includes a jurisdiction's restriction of the ingredient as well as agnosticism towards it. Hardly the trappings of "national political debate." *Cf. R J Reynolds*, 96 F.4th at 881-82 (holding that federal cigarette warnings were uncontroversial under *Zauderer*).[3]

So, *Zauderer* review applies, and the Disclosure Law withstands it. As the State showed, the warning is: (1) rationally related to Texas's twin goals of increasing consumer awareness and promoting the use of different ingredients; and (2) not unduly burdensome *vis-a-vis* Plaintiffs' speech. State Br. 27-29.

---

[3] The Chamber of Commerce and Washington Legal Foundation also argue that *Zauderer* doesn't apply because the Disclosure Law is not designed to prevent consumer deception in commercial advertising. Chamber of Com. Br. 11-12; Wash. Legal Found. Br. 12-14. But this Court firmly rejected the view that *Zauderer* is so limited. *See R J Reynolds*, 96 F.4th at 883 ("[W]e hold that *Zauderer* applies even when the government's claimed primary interest is not the prevention of consumer deception.").

**2.** Against that showing, Plaintiffs repeatedly note that the State has not verified the legal status of each ingredient listed in section 431.0815(a) across the four jurisdictions. Pls. Br. 1-2, 4, 13, 16-17, 30-32, 36, 38. That might be significant if subsection (b)(1) compelled Plaintiffs' members to say that Australia, Canada, the E.U., or the U.K. "banned" or otherwise restricted a listed ingredient—as the originally introduced, *unenacted* version of SB 25 did. State Br. 5, 24-25 (citing Tex. S.B. 25, 89th Leg., R.S., § 7 (2025) (introduced version)). But the Disclosure Law, as enacted, doesn't require anyone to say that. It requires a food manufacturer to say only that a product "contains an ingredient that is *not recommended*" by Australia, Canada, the E.U., or the U.K. Tex. Health & Safety Code § 431.0815(b)(1) (emphasis added).

As Plaintiffs and *amici* acknowledge, the statute's "not recommended" terminology is *not* a technical categorization used by any of these jurisdictions. Pls. Br. 17, 26, 35-36; Am. Chem. Council Br. 5-7; Tex. Ass'n of Mfrs. Br. 12-13; *cf.* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly."). Consequently, the disclosure should be construed according to its commonly-understood, plain-English meaning, Tex. Gov't Code § 311.011(a)—namely, that the product contains an ingredient that has not been endorsed for consumption by at least one of the four named jurisdictions, be it through restriction of the ingredient or even via

agnosticism towards it, State Br. 23-26. Plaintiffs do not appear to contend that the disclosure, so construed, is false.[4]

**3.** Plaintiffs additionally suggest that the Disclosure Law is too controversial for *Zauderer* because the law takes sides in "an ongoing nationwide debate about food safety and food labeling." Pls. Br. 37. But the required disclosure provides only that Australia, Canada, the E.U., or the U.K. has "not recommended" consuming an ingredient contained in a product—simple, straightforward, and non-contentious. This is nothing like *NIFLA*, where pro-life "crisis pregnancy centers" were forced to convey California's opposing position regarding state-sponsored abortion—"anything but an 'uncontroversial' topic." 585 U.S. at 769. In contrast to the longstanding, nationwide debate regarding abortion, Plaintiffs recognize that "*[a]ll agree* that improving [food] safety and transparency are vitally important goals." Pls. Br. 1 (emphasis added). The Disclosure Law's "mere connection" to any supposedly contentious debate regarding accomplishing these universal goals is insufficient to take the disclosure outside the scope of *Zauderer*. *R J Reynolds*, 96 F.4th at 881. That Plaintiffs "do[] not like the message does not make it controversial." *Id.*

Washington Legal Foundation contends that *R J Reynolds*'s controversiality test stems from *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439 (5th Cir. 2022), which was

[4] Plaintiffs call out the State's "surprising assertion" that the truth of the required disclosure "somehow doesn't matter." Pls. Br. 36. Hardly so. The State recognized that a disclosure is not subject to *Zauderer* if its truth is "overwhelmingly disproven." State Br. 23 (citing *R J Reynolds*, 96 F.4th at 881). The parties simply dispute the proper construction of the disclosure.

vacated by the Supreme Court in *Moody*, 603 U.S. 707—"so . . . implod[ing] *Reynolds*'s foundation," Wash Legal Found. Br. 11-12. But *R J Reynolds*'s controversiality analysis derives principally from *Zauderer* itself, along with discussion and distinction of *NIFLA* and other circuit cases. *R J Reynolds*, 96 F.4th at 881-82. In all events, *Moody* did not address this Court's *Zauderer*-based controversiality analysis whatsoever. It vacated *Paxton* because this Court had not conducted an appropriate facial-challenge inquiry for the law at issue. *Moody*, 603 U.S. at 743-44. Consequently, following *Moody*, this Court has continued to cite *R J Reynolds*'s distillation of *Zauderer*, including its controversiality component. *See*, *e.g.*, *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 358 (5th Cir. 2025). *R J Reynolds* remains good law.

**4.** Plaintiffs further assert that even if *Zauderer* does apply, it "wouldn't change the ultimate result" because the Disclosure Law is both "unjustified" and "unduly burdensome" under the *Zauderer* test. Pls. Br. 38. But the State showed that the law is justified because it is rationally related to raising consumer awareness regarding potential food-safety and food-quality concerns—and thereby promoting the creation of different products. State Br. 28. Plaintiffs' only answer is to repeat their inapposite complaint that the State failed to verify the legal status of all the ingredients included in section 431.0815(a). Pls. Br. 38. Meanwhile, Plaintiffs have no response to the State's showing that the Disclosure Law will not unduly burden Plaintiffs' speech. State Br. 28-29. They instead focus (at 38) on economic and reputational costs that are irrelevant to the *Zauderer* analysis.

**5.** Predictably, Plaintiffs contend that the State forfeited its *Zauderer* argument. Pls. Br. 34-35. Even assuming the State did not adequately press for applying *Zauderer* in district court, however, Plaintiffs and their supporting *amici* raised the issue, ROA.77-78, 167-76, 187-90, and the district court specifically rejected applying it, *see* ROA.274 ("The Court finds that *Zauderer*'s deferential test does not apply here."). That's more than sufficient to preserve the issue for appellate review—particularly at this nascent stage of the case. State Br. 30; *see also Kaswatuka v. DHS*, 7 F.4th 327, 329 (5th Cir. 2021) (appellate court can always say the district court ruled incorrectly on the point it did rule on).

### C. Even if *Zauderer* is inapplicable, the Disclosure Law likely satisfies intermediate scrutiny.

**1.** The State also demonstrated that, even assuming *Zauderer* does not apply, the Disclosure Law is constitutional under the intermediate-scrutiny framework set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). State Br. 30-33. As the State explained, it has a substantial interest in protecting the health of its citizens by promoting the consumption of healthy foods. The Disclosure Law advances that interest by identifying products containing ingredients that are not recommended for human consumption by other trusted jurisdictions and warning consumers accordingly. That warning likely will influence consumers to consider purchasing other products, which, in turn, will spur food manufacturers to stop using the identified ingredients. And all that happens without restricting or chilling Plaintiffs' speech.

**2.** Despite recognizing the universal interest in improving food quality and public health, Plaintiffs insist that Texas has no interest in "compelling speech that's false or misleading." Pls. Br. 30; *see also* Wash. Legal Found. Br. 18 (noting that the State has no interest in trying to "trick" and "hoodwink[]" consumers). But the State isn't trying to fool anyone. *Cf. Miller v. Johnson*, 515 U.S. 900, 916 (1995) (recognizing "the presumption of good faith that must be accorded legislative enactments"). Again, the Disclosure Law does not require Plaintiffs to falsely say that any ingredient is banned or restricted by Australia, Canada, the E.U., the U.K., or anyone else. *Supra* pp. 8-10. Neither does the law require Plaintiffs to say that any jurisdiction has made "an affirmative determination that an ingredient isn't recommended for consumption," Pls. Br. 30-31, much less that "an ingredient kills," Wash. Legal Found. Br. 17. As the State explained, the required disclosure does *not* state that Australia, Canada, the E.U., or the U.K. "*recommends against*" consuming any particular ingredient. State Br. 24-25. What it actually says—that a product "contains an ingredient that is not recommended for human consumption," Tex. Health & Human Safety Code § 431.0815(b)(1)—*includes* "the absence of an endorsement" by any one of these jurisdictions, *contra* Pls. Br. 30.

**3.** Plaintiffs next argue that the Disclosure Law "provides only remote support" for the State's interest in improving public health and therefore cannot withstand *Central Hudson* review. Pls. Br. 32. But every warning requirement necessarily "rests . . . on a cascade of assumptions" requiring consumers to notice, read, and be influenced by the warning. *Cf. id.* And, although *Central Hudson*'s "directly advance" requirement ordinarily requires some evidence of a measure's

effectiveness when someone's speech is being restricted, "such evidentiary parsing is hardly necessary when the government uses a disclosure mandate to achieve a goal of informing consumers about a particular product trait." *Am. Meat Inst. v. USDA*, 760 F.3d 18, 26 (D.C. Cir. 2014). That the disclosure materially advances the State's interest in raising consumer awareness regarding potential food-safety and food-quality concerns is covered by "the doctrine of *res ipsa loquitur*." *Id.* Perhaps that explains Plaintiffs' and their *amicis*' efforts to enjoin enforcement of the law notwithstanding their suspect contention that it won't be effective. *But see* Am. Chem. Council Br. 10 (acknowledging that "[t]he evident and intended effect of a food-labeling law that singles out particular ingredients is to discourage their use").

The National Association of Manufacturers nonetheless argues (at 5-11) that the State's "strained," "neuter[ed]," "milquetoast" construction of the Disclosure Law cannot be squared with the State's goal of warning the public about the listed ingredients. But NAM neglects to account for the fact that the warning covers foreign jurisdictions' indifference towards ingredients all the way up to banning them. *Supra* pp. 8-10; *accord* Chamber of Com. Br. 3 (recognizing that the Disclosure Law warning "could connote . . . the absence of an affirmative recommendation in favor of consumption, the existence of a negative recommendation against consumption, or a ban").

**4.** Finally, Plaintiffs aver that the Disclosure Law fails *Central Hudson* because the State did not "contend that it 'tried a government-funded public information campaign or that such a campaign would be ineffective." Pls. Br. 33 (citing *Free Speech Coal.*, 95 F.4th at 284-85). But the State did just that. As its opening brief

explained, "[i]t is self-evident . . . that a warning label placed directly on a food product would be more likely to reach and affect consumers than would a separate State advertising campaign that would have to address 44 different ingredients included in a countless array of food products." State Br. 33; *see also* Pls. Br. 11 (acknowledging that the Disclosure Law applies to over 100,000 products). It's nearly impossible to imagine an effective state messaging campaign covering so many different foods and beverages.

In all events, a law does not fail *Central Hudson*'s narrow-tailoring prong merely because Plaintiffs can identify an alternative, supposedly less speech-restrictive, path to advancing the State's interests. *See Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("[W]e have not gone so far as to impose upon [the government] the burden of demonstrating that . . . the manner of restriction is absolutely the least severe that will achieve the desired end."). A reasonable fit between means and ends is all that's required. *Id.* That's particularly so here, when the challenged disclosure doesn't even restrict Plaintiffs' ability to speak. *Cf. Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019) (holding that required warnings were invalid for unduly burdening protected speech).

Plaintiffs also point to *Free Speech Coalition* to support their tailoring argument, but there the Court concluded that the required pornography warnings were unlikely to reach minors (the intended audience for the warnings), and that even if the warnings did reach them, minors probably wouldn't understand their complex language. 95 F.4th at 284. Those concerns are inapplicable here.

## III. Plaintiffs Failed to Establish the Remaining Factors for Preliminary Injunctive Relief.

Even assuming Plaintiffs demonstrated a substantial likelihood of success on the merits of their compelled-speech claim, to obtain a preliminary injunction, they still must show irreparable harm and that the balance of equities favors injunctive relief. Plaintiffs failed on both counts. State Br. 34-35. They cannot show irreparable harm because the Disclosure Law requirements are not effective until 2027 and Plaintiffs have not been threatened with any prospective enforcement action. And the equities tilt against awarding injunctive relief because the Disclosure Law is a public-health measure designed to combat obesity and chronic disease by providing Texans with information about potentially harmful ingredients contained in a vast array of food and beverage products.

Plaintiffs assert irreparable injury based on their "right to be free from compelled speech." Pls. Br. 39 (quoting *Book People*, 91 F.4th at 341). But Plaintiffs have not argued (much less shown) that the Disclosure Law requirements limit their ability to speak, which is the pertinent harm. *See R J Reynolds*, 96 F.4th at 886 (explaining that *Zauderer*'s burden analysis "focus[es] on the possibility of chilling protected commercial speech"); *Chamber of Com.*, 85 F.4th at 772 (examining whether compelled disclosures "downed out [plaintiff's'] own message"). They also point to "irreparable economic harm" associated with supposed "unrecoverable compliance costs" spurred by the Disclosure Law. Pls Br. 39-40. Yet Plaintiffs concede that the law *does not apply* to "current product labels so long as they aren't changed." Pls. Br. 34. It's therefore unclear how the Disclosure Law

"forces [Plaintiffs] to adopt costly changes." Pls. Br. 40. Besides the lack of any clear, imminent constitutional or economic injury, Plaintiffs also ignore the State's countervailing interest in enforcing the Disclosure Law. *Cf. Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003) ("A preliminary injunction is an extraordinary remedy which courts grant only if the movant has clearly carried the burden as to all four elements.").

## Conclusion and Prayer

Because Plaintiffs lack standing to maintain their First Amendment claim, the Court should vacate the preliminary injunction entered by the district court and remand with instructions to dismiss that claim. If the Court concludes that Plaintiffs have standing, however, the Court should reverse the preliminary injunction for the reasons set forth above.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

William R. Peterson
Solicitor General

/s/ Evan S. Greene
Evan S. Greene
Assistant Solicitor General
evan.greene@oag.texas.gov

*Counsel for Defendant-Appellant*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,068 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Evan S. Greene
Evan S. Greene